# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SHEILA and TROY FULLBRIGHT, as )
  Parents and Next Friends of T. F., )
                                   )
     Plaintiffs, )
                                   )
vs. ) NO. CIV-09-297-D
                                   )
STATE FARM MUTUAL AUTOMOBILE )
 INSURANCE COMPANY, )
                                   )
     Defendant. )

## ORDER

Before the Court is Defendant's Motion to Quash and Motion for Protective Order on Plaintiffs' Deposition Notice Pursuant to Rule 30(b)(6) [Doc. No. 26]. Plaintiffs have responded, and Defendant has filed a reply.

The deposition notice at issue directs Defendant[1] to designate and present for deposition a corporate representative to testify regarding the investigation and evaluation of Plaintiffs' insurance claim after the claim was reassigned from Sherry Foster to a different claims adjuster. Deposition Notice [Doc. No. 25]. It further requests testimony regarding "the details of all investigations and evaluations of T. F.'s Uninsured/Underinsured Motorist Insurance claim after the date the claim was reassigned from Sherry Foster to a different adjuster." *Id.*

Defendant seeks to quash the notice and obtain a protective order pursuant to Fed. R. Civ. P. 26, arguing that the notice seeks information outside the scope of proper discovery, and the information sought in the notice is protected by the work product doctrine or the attorney-client

---

[1] Defendant notes that the notice is incorrectly directed to State Farm Insurance Company rather than to State Farm Mutual Automobile Insurance Company, the defendant in this case. However, Defendant's motion is not directed to that error.

privilege. Defendant points out that Plaintiffs filed this lawsuit while Defendant's investigation of the claim was ongoing; it argues that its investigation and processing of the claim during the period after this lawsuit was filed is not subject to discovery.

In this lawsuit, Plaintiffs contend that Defendant breached a contract of insurance and acted in bad faith toward Plaintiffs in connection with a claim on behalf of Plaintiffs' minor son, T.F. The record reflects that Plaintiffs filed this lawsuit on February 26, 2009 in the District Court of Oklahoma County; it was removed to this Court on March 20, 2009. The parties have conducted discovery and, on or about September 1, 2009, Plaintiffs deposed Sherry Foster, the adjuster handling Plaintiffs' claim. According to Plaintiffs, they learned during the deposition that, on or about March 5, 2009, their claim was assigned to another adjuster. As a result, Ms. Foster was unable to testify regarding matters occurring after that date. Ms. Foster testified that she had not evaluated the claim since December 16, 2008, and had no knowledge of any actions taken by Defendant's adjusters after that time. *See* excerpts of Ms. Foster's deposition, attached to Plaintiffs' response as Exhibit 1, p. 24. Plaintiffs seek to depose Defendant's employees who are knowledgeable about the handling of the claim after it was assigned to another adjuster.

Defendant argues that the deposition notice must be quashed because the time period for which Plaintiffs seek deposition testimony did not commence until after this lawsuit was filed; Defendant contends that discovery regarding the investigation and evaluation of Plaintiffs' insurance claim after the lawsuit was filed is not relevant and, in any event, is barred by the work product doctrine and/or attorney-client privilege.

In response, Plaintiffs agree that they cannot depose a corporate representative regarding any communications which are protected by the work product doctrine or the attorney-client privilege.

2

Plaintiffs state that it is not their intent to do so; instead, the deposition would be limited to the new adjuster's testimony regarding evaluation and handling of the claim after Ms. Foster was no longer involved.

As Defendant points out, litigation conduct by an insurer generally cannot serve as evidence of its alleged bad faith in denying a claim. *Sims v. Travelers Ins. Co.*, 16 P. 3d 468, 471 (Okla. Civ. App. 2000) (citing *Timberlake Construction Co. v. U. S. Fidelity and Guaranty Co.*, 71 F. 3d 335, 340-41 (10th Cir. 1995). In *Sims*, the Court discussed the Tenth Circuit's analysis and rationale in *Timberlake*:

> The Tenth Circuit reasoned that an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage because once litigation has commenced, the actions taken in its defense are not probative of whether the insurer's denial of the claim was in bad faith.

*Sims*, 16 P. 3d at 471. Instead, "[t]he duty of good faith and fair dealing exists during the time the claim is being reviewed. Once a lawsuit is filed, to hold an insurer's acceptable litigation tactics as evidence of bad faith would be to deny the insurer a complete defense." *Roesler v. TIG Ins. Co.*, 251 F. App'x 489, 498 (10th Cir. 2007) (unpublished opinion) (citing *Sims, Timberlake* and *Hale v. A. G. Ins. Co.*, 138 P. 3d 567, 571-72 (Okla. Civ. App. 2006)).

Relying on these decisions, Defendant argues that Plaintiffs cannot conduct the noticed deposition because it seeks discovery involving only post-litigation conduct. However, Plaintiffs do not contend Defendant's litigation conduct constitutes bad faith; instead, they contend that Defendant delayed payment of the insurance claim and that, in doing so, it acted in bad faith.

The Court has reviewed the decisions on which Defendant relies and finds that Defendant interprets those decisions too broadly. The cited decisions rejected attempts to pursue a bad faith claim based on an insurer's litigation tactics, not on its ongoing investigation of the insurance claim

3

after litigation was filed. In *Sims,* the plaintiffs argued that the insurer engaged in bad faith by filing motions to dismiss, objecting to discovery, failing to participate in meetings with opposing counsel, and rejecting a requested mediation; the court found these tactics were not evidence of bad faith denial of the plaintiffs' claim, but were litigation tactics which, if improper, could be remedied by application of the state or federal civil procedure rules. *Sims,* 16 P. 3d at 471. In *Timberlake*, the plaintiffs sought to introduce, as evidence of bad faith, the fact that the insurer had filed a counterclaim and a motion to join a third party, who was allegedly liable to the plaintiffs; the Tenth Circuit affirmed the trial court's exclusion of that evidence because it constituted litigation conduct unrelated to the insurer's decision regarding the plaintiff's insurance claim. 71 F. 3d at 339.

These decisions do not hold that, once a lawsuit is filed, there can be no discovery related to the insurer's investigation and handling of the claim. The Court has located no authority applying Oklahoma law which precludes discovery of <u>all</u> post-litigation actions regarding investigation or processing of an insurance claim. Nor do those decisions hold that such discovery is necessarily precluded by the attorney-client privilege or work product doctrine. In fact, as Plaintiffs point out in their response brief, the Oklahoma Supreme Court has held that all post-litigation communications between an insurer and its counsel are not automatically protected by the attorney-client privilege. *Scott v. Peterson*, 126 P. 3d 1232, 1234 (Okla. 2005) (blanket assertion of privilege did not warrant denial of a request to produce an entire insurance claims file; instead, the insurer was required to produce a privilege log and justify its contention that some of the documents contained in the file should be excluded on that basis).

To the extent that Defendant seeks to quash the deposition notice at issue on the grounds that it seeks discovery regarding events after this lawsuit is filed, the motion is denied. Plaintiffs may

4

conduct discovery regarding the processing and investigation of their claim by the adjuster or adjusters who replaced Ms. Foster. However, the Court agrees with Defendant that the deposition notice at issue is overly broad and must be more narrowly tailored to limit the requested discovery to the internal handling of Plaintiffs' claim by the adjuster or adjusters who were assigned that claim after Ms. Foster was no longer involved. According to her testimony, she did not review Plaintiffs' file after December 16, 2008. Thus, the scope of the deposition notice is limited to the time period after that date. To the extent that the broad language of the deposition notice may be construed to require production of additional witnesses or matters outside the foregoing topics and time period, the motion is granted.[2]

For the foregoing reasons and subject to the specific limitations set forth herein, Defendant's Motion [Doc. No. 26] is GRANTED in part and DENIED in part.

IT IS SO ORDERED this 15th day of January, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[2] Defendant is, of course, correct in its assertion that matters protected by the attorney-client privilege or the work product doctrine are not within the scope of permissible discovery. Because the parties have demonstrated an unfortunate inability to resolve discovery disputes in good faith, the Court is compelled to remind counsel of their ongoing duty to resolve any issues regarding the scope of the planned depositions without resorting to Court intervention. The attorneys representing Plaintiffs and Defendant are experienced in litigation of this type and are aware of the rules governing the proper scope of depositions. As a result, if Defendant objects to deposition questions on attorney-client privilege or work product grounds, counsel for both parties must be prepared to confer in good faith regarding such objections before requesting Court intervention.